IRVING, J.,
dissenting:
¶ 12. Because I believe the evidence insufficient on the element of penetration to convict Hopson of sexual battery, I respectfully dissent. However, I do believe the evidence sufficient to convict him of attempted sexual battery. Therefore, I would reverse and render on the charge of sexual battery but reverse and remand for sentencing on attempted sexual battery.
¶ 13. The facts, as told by the victim, which lead me to this conclusion are as follows:
Q. Okay. Did anything unusual happen to you on December 21,1996?
A. Yes ma'am.
Q. And what happened?
A. I was hit and been choked by Alvis Joe Hopson.
Q. Do you remember what time this was Mrs. JW?
A. It was about 12:30.
Q. Okay. a.m. or p.m.
A. A.m.
Q. Now, where were you when this happened Mrs. JW?
A. Over at Walter’s house.
Q. Walter who?
A. Walter Love’s house.
* * * *
Q. And where were you sleeping, Mrs. JW?
A. On the couch.
Q. And where were your children?
A. On the couch with me.
Q. And you had mentioned earlier that Mr. Hopson attacked you (sic) where was (sic) you when he attacked you?
A. On the couch asleep.
Q. Can you tell me what happened?
A. I was sleeping. I just felt drug me (sic) off the couch and strip my clothes off of me.
Q. Where did he grab you, Mrs. JW?
A. Around my leg.
Q. Lets go back to the point where he grabbed you. You say he grabbed you around your neck?
A. Yes ma'am.
Q. What happened then?
A. Then he took me to the other room. Then he took my clothes off. He stripped all my clothes off.
Q. Lets hold up here. What do you mean when you say he stripped my clothes off?
A. He tore my clothes off.
Q. In what manner what was he doing?
A. I was struggling trying to keep him off of me then he stripped all my clothes off of me and he throwed (sic) me on the bed.
Q. He threw you on the bed?
A. Yes ma'am.
Q. During this time you said you and he were struggling?
A. Yes.
Q. And what happened when he threw you on the bed?
A. He threw me on the bed. He just, I mean he just was hitting me trying to keep me being still and I was trying to raise up to keep him off of me. He turned me over talking about he wanted to — .
Q. You say he hit you. Where did he hit you?
A. In my face.
Q. Okay and then what happen you were struggling and he hit you what happened from that point?
A. Then a car had drove (sic) up outside and Walter came in the house and he got up. He asked what was wrong with me and I left out of the house. I grabbed my stuff and I left.
Q. You said at one point he was trying to turn you over; what happened after that?
A. What happened.
Q. Right?
*231 A. He tried to tried to (sic) stick his penis in me then and I was struggling trying to keep him off of me.
Q. He tried to turn you over in what position was he trying to get you in? A. From the back.
Q. Was he able to insert his penis?
A. No, I was struggling.

Q. Then what happened?

A. Then he ejaculated I don’t know it was pee or what it was. I was wet all over mg bodg.

Q. From that point after he tried to turn you back did he try to turn you back over?
A. No ma'am.
Q. Now, from that point you and Mr. Hopson were still wrestling?
A. Yes ma'am.
Q. Now, you had stated earlier that he had initially you stated he had inserted his penis in you; what point did he do that?
A. I guess, I mean when he was on me he — he just — I don’t know if it was pee all over my body or what he ejaculated on me.

Q. Did he insert his penis inside of you?

A. I didn’t give him a chance to do it.

Q. Okay. Now, from that point forward but at that point he did have his penis out?
BY MR. BELL: Objection to the leading your Honor
BY THE COURT: Sustained. Don’t lead her.
¶ 14. Later on in JW’s testimony, she gave the following testimony:
Q. Okay. Now, one thing I wanted to ask you about Mrs. JW (sic) you had you (sic) mentioned that all you knew that you were wet?
A. Yes ma'am.
Q. In the earlier statement that you gave Deputy Prestige you testified that he had squirted semen all over you so what is your position on that now?
A. I don’t know if it was pee or sperm or what, I don’t know.
Q. But there was something on your body?
A. Yes ma'am.
Q. And where was it on which portion of your body?
A. It was from my navel down towards the bottom.
[[Image here]]
Q. Do you remember talking with Terry Prestige a deputy at the sheriffs department?
A. Yes ma'am.
Q. Okay. Now, do you remember telling Mr. Prestige that the defendant Al-vis Joe Hopson inserted his penis in your vagina, you know what I mean when I say vagina?
A. Yes.
Q. Do you remember him (sic) telling you that?
A. Yes ma'am.
Q. Is that a true assessment of what happened; did you remember everything when you were talking to Mr. Prestige?
A. Yes ma'am, he did insert it in me but he did not go all the way up in me. Q. Well, what I’m saying how, (sic) it doesn’t matter how far did he insert his penis in your vagina?
A. Yes ma'am.
Q. And you know what I’m asking?
A. Yes ma'am.
¶ 15. It is clear from the colloquy set forth above that JW, the victim, did not testify — until impeached by the prosecution — that penetration had in fact occurred. I believe this impeached testimony was insufficient to convict Hobson because the impeachment occurred as to a critical element of the offense, and there was no corroborating evidence on *232 this crucial element. I take this position fully aware of the plethora of case law in this jurisdiction holding that one may be convicted of rape on the uncorroborated testimony of the victim. However, I am aware of no case law holding that one may be convicted on the impeached, uncorroborated testimony of the victim where the impeachment occurred as to one of the crucial elements of the offense. For the reason set forth and the illuminating testimony of the victim, I respectfully dissent.